**2017 IL 121483**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 121483)

*In re* JARQUAN B., a Minor (The People of the State of Illinois, Appellee, v. Jarquan B., Appellant).

*Opinion filed November 8, 2017.*

CHIEF JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Justices Freeman, Garman, and Theis concurred in the judgment and opinion.

Justice Thomas specially concurred, with opinion.

Justice Burke specially concurred, with opinion, joined by Justice Kilbride.

## OPINION

¶ 1      On November 17, 2015, respondent Jarquan B., a delinquent minor, was found to be in violation of his misdemeanor probation sentence pursuant to the Juvenile

Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-1 *et seq.* (West 2014)) and was ordered to be committed to the Department of Juvenile Justice (DJJ) on April 26, 2016. Respondent appealed his commitment, arguing that a newly enacted amendment to section 5-710(1)(b) of the Juvenile Court Act that became effective on January 1, 2016 (the 2016 amendment), precluded the trial court from committing him to the DJJ for his misdemeanor offense. Pub. Act 99-268 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-710(1)(b)). A divided panel of the appellate court affirmed the commitment order. 2016 IL App (1st) 161180. We allowed respondent's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Mar. 15, 2016)) and now affirm the judgment of the appellate court.

¶ 2                                  STATUTES INVOLVED

¶ 3        Section 5-720(4) of the Juvenile Court Act, which sets forth the trial court procedures to resentence a delinquent juvenile upon the revocation of probation, states:

> "If the court finds that the minor has violated a condition at any time prior to the expiration or termination of the period of probation or conditional discharge, it may continue him or her on the existing sentence, with or without modifying or enlarging the conditions, or may revoke probation or conditional discharge and *impose any other sentence that was available under Section 5-710 at the time of the initial sentence.*" (Emphasis added.) 705 ILCS 405/5-720(4) (West 2014).

¶ 4        At the time respondent was initially sentenced, section 5-710(1)(b) of the Juvenile Court Act, which lists the kinds of sentencing orders available to a trial court, provided as follows:

> "A minor found to be guilty may be committed to the Department of Juvenile Justice under Section 5-750 if the minor is 13 years of age or older, provided that the commitment to the Department of Juvenile Justice shall be made only if a term of incarceration is permitted by law for adults found guilty of the offense for which the minor was adjudicated delinquent." 705 ILCS 405/5-710(1)(b) (West 2014).

¶ 5        Effective January 1, 2016, section 5-710(1)(b) was amended to provide:

"A minor found to be guilty may be committed to the Department of Juvenile Justice under Section 5-750 if the minor is at least 13 years and under 20 years of age, provided that the commitment to the Department of Juvenile Justice shall be made only if a term of imprisonment in the penitentiary system of the Department of Corrections is permitted by law for adults found guilty of the offense for which the minor was adjudicated delinquent." Pub. Act 99-268 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-710(1)(b)).

¶ 6                                    BACKGROUND

¶ 7        In January 2015, the State filed a petition for adjudication of wardship of respondent, a minor, for the offense of criminal trespass to a motor vehicle, a Class A misdemeanor (720 ILCS 5/21-2 (West 2014)). Respondent entered a plea of guilty on February 26, 2015, and the circuit court of Cook County sentenced respondent to 12 months' court supervision, 30 days' stayed detention, and community service. At respondent's sentencing hearing, the trial court informed respondent that in accordance with section 5-710(1)(b), if he violated the terms of his supervision, it could place him on probation or hold him in custody for up to 30 days or send him to the DJJ. At the time of respondent's sentencing, the maximum sentence for a Class A misdemeanor was less than one year of incarceration. 730 ILCS 5/5-4.5-55 (West 2014).

¶ 8        Two weeks after respondent's initial sentencing, the State moved to execute the stayed mittimus on the ground that respondent had left his residential placement on multiple occasions without permission. The trial court entered an order continuing the motion to stay the mittimus and placed respondent on electronic home monitoring. Later that day, respondent violated his electronic monitoring, and the trial court ordered him to serve 10 days in the juvenile temporary detention center (JTDC). Shortly after his release, respondent again violated the terms of his sentence, and he was ordered to serve additional time in the JTDC.

¶ 9        In September 2015, the State filed a petition alleging that defendant violated his supervision by leaving his residential placement multiple times after he was released from the JTDC. Respondent failed to appear at the subsequent hearing, and the trial court issued a warrant for his arrest. On October 13, 2015, respondent

appeared before the trial court and admitted to the State's petition. The trial court revoked respondent's court supervision and continued the case for sentencing.

¶ 10    At respondent's sentencing hearing on November 5, 2015, the trial court sentenced respondent to six months' probation and again inquired whether respondent understood that, based on his admission, he could be sentenced to the DJJ. Respondent acknowledged that he understood the terms imposed and the possible penalties if he violated the terms of his probation. On the way back to respondent's residential placement facility, however, respondent fled from the residential placement staff, thereby again violating the terms of his probation. The next day, the State filed another petition alleging that respondent violated his probation.

¶ 11    On November 17, 2015, at the hearing on the State's petition, respondent admitted to the probation violation. The trial court once more inquired of respondent whether he was fully aware that, based on his admission to the probation violation, he could be committed to the DJJ. Respondent acknowledged that he understood. The matter was continued for sentencing. However, prior to respondent's sentencing hearing scheduled in early December 2015, respondent again absconded from his residential placement without permission. An arrest warrant was issued, and respondent was eventually arrested on February 5, 2016. On February 18, 2016, the trial court conducted a sentencing hearing on the State's November 2015 petition to revoke probation. Before reaching a decision, the trial court continued the matter for sentencing, warning respondent that he had "one more chance" and, if he left his residential placement again, the court would commit him to the DJJ.

¶ 12    In mid-March 2016, respondent did not appear at his sentencing hearing. An arrest warrant was issued resulting in respondent's arrest about a month later. On April 26, 2016, over the objections of defense counsel, the trial court found it to be in respondent's best interest to commit him to the DJJ.

¶ 13                                    ANALYSIS

¶ 14    The central issue in this case is whether, on the date of respondent's sentencing on his misdemeanor probation violation, April 26, 2016, the trial court had the statutory authority to commit him to the DJJ. The crux of respondent's argument relies on the applicability of the amendment to section 5-710 of the Juvenile Court Act that became effective on January 1, 2016, which precludes the trial court from committing a minor to the DJJ for a misdemeanor offense. 705 ILCS 405/5-710(1)(b) (West Supp. 2015).

¶ 15    Before this court can address whether the trial court erred in committing respondent to the DJJ, we begin our review, as we must, with the question of whether this court should consider the issue because the appeal has become moot.

¶ 16                              I. MOOTNESS

¶ 17    No dispute exists that, having served the terms of his sentence, respondent's appeal is rendered moot. *In re Shelby R.*, 2013 IL 114994, ¶ 15 ("Where *** the appeal involves the validity of a sentence, such appeal is rendered moot if the sentence has been served."). Although the general rule is that reviewing courts will not decide moot questions, we will consider an otherwise moot case where it falls under a recognized exception. *Id.* The appellate court here held that the validity of respondent's sentence, although moot, was reviewable under the public interest exception to the mootness doctrine. 2016 IL App (1st) 161180, ¶ 14. Both the State and respondent urge this court to consider respondent's claim under the public interest exception. This narrowly construed exception requires that (1) the question presented is of a public nature, (2) a need exists for an authoritative determination of the question for the future guidance of public officers, and (3) the question is likely to recur. *In re Shelby R.*, 2013 IL 114994, ¶ 16.

¶ 18    In *In re Shelby R.*, this court applied the public interest exception in a case where a juvenile completed her sentence and had been released by the time the appeal was decided. *Id.* ¶¶ 10, 23. Applying the exception, this court concluded the detention of a juvenile is a matter of public concern and that the liberty interests of minors posed a significant need for authoritative intervention, as did the need to provide guidance to judges, prosecutors, and defense attorneys on a question that was likely to recur. *Id.* ¶¶ 16, 22-23.

- 5 -

¶ 19        As in *In re Shelby R.*, this case satisfies all three requirements for application of the public interest exception. First, the question we are asked to address is certainly of a public nature, as it deals in general with the detention of minors. See *In re J.T.*, 221 Ill. 2d 338, 350-51 (2006) (the question of how long a minor will remain incarcerated or subject to parole restrictions or the custodianship of the Department of Corrections is a question of public importance). Second, resolution of this issue will undoubtedly affect the procedures that must be followed in similar proceedings under the Juvenile Court Act. Thus, future guidance of public officers is necessary to provide clear direction in the application of the relevant provisions of the Juvenile Court Act and create a uniform body of law. As to the third criterion, the parties agree that the question herein is likely to recur despite it being over a year since the 2016 amendment to the Juvenile Court Act became effective. Respondent notes that a juvenile may be placed on probation for a misdemeanor offense for a period not to exceed "5 years or until the minor has attained the age of 21 years, whichever is less." 705 ILCS 405/5-715(1) (West 2016). Therefore, application of the 2016 amendment could recur well after the effective date of January 1, 2016, to a minor sentenced to probation prior to the effective date of the amendment. Accordingly, we agree with the parties that the public interest exception to the mootness doctrine should apply and review by this court is appropriate. We now turn to the merits of respondent's sentencing issue.

¶ 20                                    II. MERITS

¶ 21        This appeal requires us to construe the statutory language of various provisions of the Juvenile Court Act to determine whether a delinquent minor's commitment to the DJJ, upon probation revocation, is permitted for an offense no longer eligible for commitment. As such, our review is *de novo*. *In re Shelby R.*, 2013 IL 114994, ¶ 13.

¶ 22        The cardinal rule in construing a statute is to ascertain and give effect to the legislative intent. *People v. Chapman*, 2012 IL 111896, ¶ 23. The most reliable indicator of that intent is the plain and ordinary meaning of the statutory language itself. *People v. Goossens*, 2015 IL 118347, ¶ 9. Our analysis of the provisions in the Juvenile Court Act is also guided by the fundamental principle that statutes must be read as a whole and not as isolated provisions. *In re Shelby R.*, 2013 IL

- 6 -

114994, ¶ 32. Therefore, we must construe words and phrases in light of the other relevant portions of the statute so that, if possible, no term is rendered superfluous or meaningless. *People v. Smith*, 2016 IL 119659, ¶ 27. If the language of a statute is clear and unambiguous, we will give effect to the statute's plain meaning without resort to other aids of statutory construction. *Alternate Fuels, Inc. v. Director of the Illinois Environmental Protection Agency*, 215 Ill. 2d 219, 238 (2004).

¶ 23    Respondent's primary argument is that the trial court erred as a matter of law by committing him to the DJJ for violating the terms of his probation. Because sentencing on the revocation of probation took place after the effective date of the amendment to section 5-710(1)(b), respondent claims that the lower courts erred by considering the language of another section of the Juvenile Court Act (705 ILCS 405/5-720(4) (West 2014)) to interpret whether the amended version of section 5-710(1)(b) applies to his particular situation.

¶ 24    Respondent misunderstands the sentencing provision under section 5-720 and the reason the trial court considered the language of that section in ordering respondent to be committed to the DJJ.

¶ 25    Section 5-720 provides the procedures for revocation of a juvenile's probation or conditional discharge. When, as here, a petition is filed charging the minor with violating a condition of his probation, section 5-720 requires the trial court to hold a hearing to determine whether a violation has occurred. 705 ILCS 405/5-720(2) (West 2014). If the trial court determines that the minor has violated a condition of his probation, then the trial court may, among other things, revoke probation and impose any other sentence that was available under section 5-710 "at the time of the initial sentence." 705 ILCS 405/5-720(4) (West 2014).

¶ 26    In this case, after finding respondent guilty of violating a condition of his probation, the trial court looked to the sentences available at the time of respondent's initial sentence to court supervision, which was entered on February 26, 2015. It is undisputed that at the time respondent was initially sentenced, he faced the possibility of being sentenced to the DJJ. As such, the trial court sentenced respondent to a term of commitment in the DJJ.

¶ 27    As stated above, respondent essentially asserts that his sentence following the revocation of probation is invalid because the amendment to section 5-710(1)(b)

that became effective on January 1, 2016, prohibits the trial court from committing a minor to the DJJ for misdemeanor offenses. The plain language of the amendment is not at dispute in this appeal. What is at dispute is whether a commitment sentence that was available at the time of respondent's initial sentence prior to the amendment was still a sentence the trial court could impose after the effective date of the amendment to section 5-710(1)(b). Thus, the question presented does not center on what the plain language of amended section 5-710 means but to which cases it should apply.

¶ 28    Respondent contends that the 2016 amendment and section 5-720(4) are in conflict such that his commitment to the DJJ was unauthorized because the 2016 amendment precludes the trial court from imposing a sentence that was available at the time of his initial sentencing. In other words, respondent disagrees that the specific language in section 5-720(4)—stating that a trial judge may "impose any other sentence that was available under section 5-710 *at the time of the initial sentence*" (emphasis added)—evinces legislative intent to set the date of available dispositions as of the time of the initial sentence. Instead, respondent urges this court to focus only on the amendment and its purpose of prohibiting the commitment of minors to the DJJ for misdemeanor offenses.

¶ 29    The State, on the other hand, argues that respondent's interpretation of the relationship between the two provisions of the Juvenile Court Act is illogical because it renders the plain meaning of section 5-720(4) inoperable by eliminating the retrospective nature of the provision allowing courts to revoke probation and impose any other sentence that was initially available. The State contends that this court need look no further than the plain language of section 5-720(4) to find that sections 5-710(1)(b) and 5-720(4) work harmoniously even after the amendment. The State argues that section 5-720(4) should be construed as governing sentencing in juvenile probation revocation proceedings and section 5-710(1)(b) should be read as governing initial sentencing in juvenile proceedings. Under this construction, the State argues that the version of section 5-710(1)(b) in effect at the time of initial sentencing should apply because this construction gives effect to the plain meaning and purpose of both provisions. That is, in this situation, a delinquent minor who was initially sentenced on or after January 1, 2016, could not be committed to the DJJ, but a minor misdemeanant who was initially sentenced prior to that date could be committed to the DJJ in probation revocation

proceedings before or after January 1, 2016, because that sentence "was available under Section 5-710, at the time of the initial sentence." 705 ILCS 405/5-720(4) (West 2014). For the following reasons, we agree with the State.

¶ 30    On November 17, 2015, respondent admitted to violating his probation, and the matter was continued for sentencing under section 5-720 of the Juvenile Court Act. During this period, respondent repeatedly violated the terms of his probation by leaving his residential placement home. This led the trial court to issue a warrant for his arrest. Respondent was not apprehended on the warrant until February 5, 2016—a date after the effective date of the 2016 amendment to section 5-710(1)(b). At the subsequent sentencing hearing, the trial court explained that because respondent was initially sentenced in 2015, all sentences available at that time, including commitment to the DJJ, were possible. Instead of immediately committing respondent to the DJJ, the trial court gave respondent multiple chances of avoiding commitment by allowing him to remain on probation. Despite this, respondent left his residential placement without permission, and the trial court issued an arrest warrant. The trial court then, in accordance with its oft-repeated admonishments, sentenced respondent to the DJJ.

¶ 31    The record is clear that respondent's conduct of leaving his residential placement merely provided the grounds for revoking his probation under section 5-720 of the Juvenile Court Act. 705 ILCS 405/5-720 (West 2014). When read together, section 5-720(4) and the amended section 5-710(1)(b) show that the trial court properly sentenced respondent to the DJJ. That is so because the trial court did not sentence respondent to the DJJ for a new offense based on the conduct that resulted in the revocation of his probation. Rather, the trial court's commitment sentence constituted a resentencing for the original, underlying offense. See *People v. Young*, 138 Ill. App. 3d 130, 134-35 (1985) ("When a defendant is admitted to probation and that probation is revoked, the trial court may sentence the defendant to any sentence that would have been appropriate for the original offense."); *In re Darius L.*, 2012 IL App (4th) 120035, ¶ 32 ("When the circuit court revokes probation, a new sentence is imposed."). Accordingly, once the trial court determined that respondent had violated a condition of his probation, the trial judge revoked respondent's probation and, pursuant to section 5-720(4) (705 ILCS 405/5-720(4) (West 2014)), resentenced him for the original offense of criminal

trespass to a motor vehicle (720 ILCS 5/21-2 (West 2014)). At no time was respondent's sentence or his guilty finding vacated by the trial court.

¶ 32    We agree with the State that the plain language of section 5-720(4) focuses on the sentences available under section 5-710 at the time of a minor's initial sentence. The phrase "at the time of the initial sentence" in section 5-720(4) clearly means that the *version* of section 5-710 in effect at the time of initial sentencing for the underlying criminal offense controls what sentencing options may be available when a minor violates a condition of probation and probation is revoked. That language in section 5-720(4) ensures that, although the General Assembly may from time to time amend section 5-710, such amendments would not alter the range of available sentences that were an option when a minor is placed on probation and admonished as to those possible available sentences that could be imposed or later imposed if the minor violates a term or condition of probation. See *In re Dexter L.*, 334 Ill. App. 3d 557, 560 (2002) (citing *People v. Witte*, 317 Ill. App. 3d 959 (2000), and *In re Tucker*, 45 Ill. App. 3d 728, 730-31 (1976)). The whole point of the statutory language of section 5-720(4) was designed to deal with this very scenario.

¶ 33    Respondent's narrow interpretation conflicts with a plain and literal reading of the Juvenile Court Act, rendering the language of section 5-720(4) "at the time of the initial sentence" meaningless and inoperative. Ignoring the plain reading and application of section 5-720(4) would mean an exception or limitation on available sentences upon revocation of probation would change each time section 5-710 is amended. The number of exceptions or limitations could be endless.[1] Indeed, a judge's admonishment would be rendered meaningless if the possible sentences could be changed after a minor is initially sentenced to probation. This result would undoubtedly cause uncertainty as to whether a punishment initially withheld as deterrence would remain available if a delinquent minor violates the terms of his or

---

[1]Since the enactment of sections 5-710 and 5-720 in 1999 (Pub. Act 90-590 (eff. Jan. 1, 1999)), section 5-710 has been amended 17 times. See Pub. Act 91-98 (eff. Jan. 1, 2000); Pub. Act 92-454 (eff. Jan. 1, 2002); Pub. Act 94-556 (eff. Sept. 11, 2005); Pub. Act 94-696 (eff. June 1, 2006); Pub. Act 95-337 (eff. June 1, 2008); Pub. Act 95-642 (eff. June 1, 2008); Pub. Act 95-844 (eff. Aug. 15, 2008); Pub. Act 95-876 (eff. Aug. 21, 2008); Pub. Act 96-179 (eff. Aug. 10, 2009); Pub. Act 96-293 (eff. Jan. 1, 2010); Pub. Act 96-1000 (eff. July 2, 2010); Pub. Act 97-1150 (eff. Jan. 25, 2013); Pub. Act 98-536 (eff. Aug. 23, 2013); Pub. Act 98-803 (eff. Jan. 1, 2015); Pub. Act 99-268 (eff. Jan. 1, 2016); Pub. Act 99-628 (eff. Jan. 1, 2017); Pub. Act 99-879 (eff. Jan. 1, 2017).

her sentence. Respondent's view ignores this court's fundamental rule that, "[a]bsent express language in the statute providing an exception, we will not depart from the plain language and read into the statute exceptions, limitations, or conditions that the legislature did not express." *People v. Shinaul*, 2017 IL 120162, ¶ 17.

¶ 34    Even if section 5-710(1)(b) and section 5-720(4) conflict as respondent claims, the result would be the same. First, for reasons explained above, our interpretation accords with this court's rule that "[e]ven when there is an apparent conflict between statutes, they must be construed in harmony if reasonably possible." *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 37 (citing *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 459 (2002)); see also *Barragan v. Casco Design Corp.* 216 Ill. 2d 435, 441-42 (2005) ("Where two statutes are allegedly in conflict, a court has a duty to interpret the statutes in a manner that avoids an inconsistency and gives effect to both statutes, where such an interpretation is reasonably possible."). In other words, before declaring two statutes to be in conflict, "[w]e must presume that several statutes relating to the same subject *** are governed by one spirit and a single policy, and that the legislature intended the several statutes to be consistent and harmonious." *Uldrych v. VHS of Illinois, Inc.*, 239 Ill. 2d 532, 540 (2011). That is precisely what our interpretation achieves. And, even if there could be no harmonious interpretation, an application of this court's specific/general rule of statutory construction is fatal to respondent's argument on the grounds that section 5-720(4) unquestionably controls over section 5-710(1)(b) since it is the more specific provision. See *Moore v. Green*, 219 Ill. 2d 470, 480 (2006) ("Where a general statutory provision and a more specific statutory provision relate to the same subject, we will presume that the legislature intended the more specific provision to govern."). That is so because section 5-720(4) applies only in probation revocation proceedings and is restricted to that type of sentencing decision, whereas section 5-710(1)(b) applies generally to sentencing proceedings. As such, respondent's argument that the amendment controls since it is the most recent enactment also fails. See *People ex rel. Madigan v. Burge*, 2014 IL 115635, ¶ 32 ("[T]he canon that the specific governs the general applies with special force where *** the earlier provision is specific and the later, general provision makes no mention of the earlier provision.").

¶ 35    It is not necessary to address the legislative history upon which respondent relies, having found the plain language of the amendment to be unambiguous. Sections 5-710(1)(b) and 5-720(4), as well as the 2016 amendment, can be read harmoniously without resorting to extrinsic aids of statutory construction. *In re Estate of Shelton*, 2017 IL 121199, ¶ 36 ("Where the language of a statute is clear and unambiguous, we will apply it as written, without resort to extrinsic aids of statutory construction.").

¶ 36    For similar reasons, we reject respondent's argument that the rule of lenity applies. See *People v. Fiveash*, 2015 IL 117669, ¶ 34 ("[T]he rule of lenity applies only to statutes containing grievous ambiguities, leaving us unable to do more than merely guess the legislature's intent." (Internal quotation marks omitted.) (citing *People v. Gutman*, 2011 IL 110338, ¶¶ 43-44)).

¶ 37    Additionally, we reject respondent's argument that section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2014)) entitles him the option to be sentenced under the amended section 5-710(1)(b) or the prior version.

¶ 38    Section 4 of the Statute on Statutes provides, in relevant part:

"If any penalty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect." 5 ILCS 70/4 (West 2014).

¶ 39    Although we have not found a case from this court directly on point, we find the appellate court decision in *People v. Denier*, 76 Ill. App. 3d 214 (1979), to be instructive. The issue in *Denier* concerned whether, upon revocation of probation, defendant was entitled to elect to be sentenced under the law as it existed at the time of his offense or under the law in effect on or after the effective date of the amendatory act where his sentence of probation occurred prior to the effective date of the amendment. *Id.* at 215.

¶ 40    To resolve the question of whether the defendant could elect to be resentenced under the amended act, the *Denier* court considered the language of a separate section of the Unified Code of Corrections, section 8-2-4(b) (Ill. Rev. Stat. 1977 Supp., ch. 38, ¶ 1008-2-4(b)), which was amended by Public Act 80-1099 (eff. Feb.

1, 1978) and distinguishes between those defendants yet to be sentenced and those who have already been sentenced before the cutoff date. *Id.* Section 8-2-4(b) stated in pertinent part:

> "If the defendant has not been sentenced before the effective date of this amendatory Act of 1977, he shall have the right to elect to be sentenced under the law as it existed at the time of his offense or under the law in effect on and after the effective date of this amendatory Act of 1977. If a sentence has been imposed before the effective date of this amendatory Act of 1977, the defendant shall not have the right of election even though his case has not been finally adjudicated on appeal ***." Ill. Rev. Stat. 1977 Supp., ch. 38, ¶ 1008-2-4(b).

¶ 41  Citing this court's decision in *People v. Grant*, 71 Ill. 2d 551 (1978), which upheld the constitutionality of section 8-2-4(b), the *Denier* court stated that it was reasonable to distinguish " 'between those defendants, on the one hand, who had not yet been accorded any sentencing hearings prior to the cut-off date, and those, on the other hand, whose sentences, already imposed, would require remandments for additional sentencing hearings.' " *Denier*, 76 Ill. App. 3d at 215 (quoting *Grant*, 71 Ill. 2d at 561-62). The *Denier* court went on to explain that section 4 of the Statute on Statutes did not give the defendant any relief because it has been early held that section 4 " 'does not give the defendant the right to be sentenced under a law not in full force and effect at the time of his sentence. It could only apply to those classes of cases in which a new law had become effective prior to the date of the actual sentence.' " *Id.* at 216 (quoting *People v. Lisle*, 390 Ill. 327, 328 (1945)). Accordingly, the *Denier* court rejected defendant's argument that he was entitled to be sentenced under the amendatory act because, having already been initially sentenced to probation in 1976, he did not have the right to elect to be resentenced, on revocation of probation, under the new amended act. *Id.* at 217.

¶ 42  Although we acknowledge that opinions from the appellate court are not binding on this court (*People v. Rivera*, 198 Ill. 2d 364, 373 (2001)), we find that *Denier* reinforces our earlier analysis that the phrase in section 5-720(4) "at the time of initial sentence" means the sentencing options listed in section 5-710 at the time of initial sentencing remain viable on revocation of probation even if section 5-710 is subsequently amended after initial sentencing. The only reason respondent can argue that he was entitled to be sentenced under the amended section

- 13 -

5-710(1)(b) is because he failed to appear at his December 2015 sentencing hearing and was not arrested until after the effective date of the amendment. As in *Denier*, the fact respondent was subsequently resentenced, on revocation of probation, for the original offense does not provide him the option of being sentenced under the amended section 5-710(1)(b), which did not become effective until after the date of his initial sentence. Contrary to respondent's belief, resentencing for his probation violation is different from a situation where a court vacates a sentence. This court has held, in that situation, a defendant is entitled to elect sentencing under a new statute. See *People v. Reyes*, 2016 IL 119271, ¶ 12 (holding that the defendant was entitled, on remand from a vacated sentence, to be resentenced under the new sentencing scheme that was enacted during the pendency of defendant's appeal).

¶ 43        Finally, we would note that if we accepted respondent's argument that section 5-710(1)(b), as amended from time to time, controls as to what sentencing options are available at resentencing upon revocation of probation, unintended consequences would result. For instance, if an amendment to section 5-710 increased the penalties for the underlying offense after a minor was initially placed on probation, the minor would be subject to the increased penalties upon revocation of probation despite the fact that the new harsher penalties were not a sentencing option when the minor was initially sentenced. And, of course, the trial judge could not have admonished such a minor of the subsequently increased penalties, which were not available at the time of initial sentence. Our determination that section 5-720(4) dictates what version of section 5-710 should be applied when a minor is resentenced after a violation of probation avoids that situation because the increased penalties were not a sentencing option "at the time of initial sentence."

¶ 44        Accordingly, we hold that the amendment at issue did not prevent the trial court from committing respondent to the DJJ for a violation of probation, as the amendment occurred subsequent to the date of initial sentencing on the underlying offense.

¶ 45                            CONCLUSION

¶ 46        For the foregoing reasons, we hold that the trial court did not err as a matter of law in ordering respondent committed to the DJJ.

¶ 47    Appellate court judgment affirmed.

¶ 48    JUSTICE THOMAS, specially concurring:

¶ 49    I join the majority opinion. The court splits today over whether these two statutes are conflicting. Ultimately, though, the entire court agrees that section 5-720(4) precludes the application of the amended version of section 5-710(1)(b) to respondent's case. I write separately to explain more fully my view that there is no statutory conflict for the court to resolve and that resorting to rules of construction for conflicting statutes is unnecessary. While this may seem like a minor point, the view being expressed by the other specially concurring justices is antithetical to the way this court has always construed statutes and, in a different case, could lead to courts ignoring a clear legislative direction as to how a statute should be applied. Because the legislature has dictated precisely how these statutes should be read, this court is not free to ignore that direction and decide the question for itself.

¶ 50    As the majority correctly holds, this case can be resolved on the basis of plain statutory language and well-established legal presumptions. There is no need to look at rules of construction that apply to conflicting statutes, as there is no conflict between these statutes. As the majority notes, this court has a duty, when reasonably possible, to construe statutes in harmony and in a way that gives effect to both. *Supra* ¶ 34. Here, that could not be easier, as it is not even arguable that the two statutes conflict.

¶ 51    In section 5-720(4), the legislature gives specific directions to the trial court on how to proceed when sentencing someone in a probation revocation proceeding. The available sentences are those that were "available under section 5-710 at the time of the initial sentence." 705 ILCS 405/5-720(4) (West 2014). In other words, the legislature recognizes that there will be times when section 5-710 is amended to change the sentencing options, and it included this language in section 5-720(4) to make clear that the court's available options are those that were available at the time of the original sentence. As the State put it, "[b]y enacting section 5-720(4) with its retroactive focus, the General Assembly ensured that, although it might amend section 5-710 from time to time, such amendments would not diminish compliance with previously imposed terms of probation by compromising the certainty of the consequences." This case simply represents one of those situations

- 15 -

in which the sentencing options have changed. Section 5-710(1)(b) was amended to take away the possibility of a sentence to the DJJ for a misdemeanor. Far from being a conflict, *this was the exact scenario that the legislature anticipated, planned for, and addressed* in section 5-720(4). And the reason for section 5-720(4)'s retroactive focus is obvious: the minor is provided with certainty regarding the consequences of violating probation.

¶ 52       The statutes can be read in perfect harmony, and there is no inconsistency between them. Accepting respondent's interpretation would render the relevant language of section 5-720(4) a nullity and violate this court's duty to read the statutes harmoniously. In her special concurrence, Justice Burke settles on the exact same harmonious construction as the majority and agrees that only respondent's interpretation precludes harmonious construction. *Infra* ¶¶ 68-69. If the statutes can be read harmoniously, they do not conflict.

¶ 53       Justice Burke states that "[t]here is nothing remarkable about finding that two statutes conflict." *Infra* ¶ 65. It would be remarkable, however, to find that these two statutes conflict, as it is patently obvious that they do not. Accepting Justice Burke's position would fundamentally alter the common understanding of a statutory conflict. Section 5-710(1)(b) is part of a statute titled "Kinds of sentencing orders" that sets forth the "kinds of sentencing orders [that] may be made in respect of wards of court." 705 ILCS 405/5-710 (West 2014). Specifically, section 5-710(1)(b) deals with commitments to the Department of Juvenile Justice. By contrast, section 5-720(4) is part of a statute titled "Probation revocation" that sets forth procedures for the court to follow in juvenile probation revocation proceedings. 705 ILCS 405/5-720 (West 2014). Specifically, section 5-720(4) deals with the choices that the court has upon finding that a minor has violated the terms of his probation. 705 ILCS 405/5-720(4) (West 2014). One of these is to revoke the minor's probation and impose a sentence. If the court chooses that option, the sentences that are available are those that were available under section 5-710 at the time of the original sentence. How these two statutes can possibly be in irreconcilable conflict is anyone's guess.

¶ 54       My principal point of disagreement with Justice Burke is over her assertion that both of these statutory provisions apply to this case by their plain language. According to Justice Burke, section 5-720(4) unambiguously states that courts may

sentence juveniles to the DJJ for misdemeanor offenses, which is the exact opposite of what section 5-720(1)(b) says. *Infra* ¶ 63. Section 5-720(4) says nothing at all about sentencing juveniles to the DJJ for misdemeanors, let alone "unambiguously" so. Rather, it provides that, when sentencing juveniles upon revocation of probation, the sentencing options that are available to the court are those that were available under section 5-710 at the time of the original sentence. This in no way conflicts with section 5-710. Rather, it tells the court which version of section 5-710 to look at. Similarly, Justice Burke claims that, under its "plain terms," section 5-710(1)(b) applies to this case. *Infra* ¶ 64. This section, however, says nothing at all about what sentences are available in probation revocation proceedings, a point that the other specially concurring justices concede.

¶ 55    To put it another way, section 5-720(4) prevents even the possibility of there being a conflict here. When the court sentenced respondent at the probation revocation proceeding, section 5-720(4) directed the court to use the version of section 5-710 that was in existence at the time of the original sentencing. The amendment that Justice Burke relies on was not in that version of section 5-710. Any changes that were made to section 5-710 after the date of respondent's original sentencing hearing are simply irrelevant.

¶ 56    Justice Burke also states that:

"Importantly, this provision [the amendment to section 5-710(1)(b)] makes no distinction between different types of sentencing decisions. It does not state that it applies only to initial sentencing proceedings, and it does not contain any words of limitation that prohibit its application in probation revocation proceedings." *Infra* ¶ 62.

But any such language would have been wholly unnecessary and redundant, given the existence of section 5-720(4). It is a basic legal presumption that "the legislature acts rationally and with full knowledge of all prior legislation." *People v. Jones*, 214 Ill. 2d 187, 199 (2005). Thus, this court presumes that, when the legislature enacted the relevant changes to section 5-710(1)(b), it did so with full knowledge of the existence of section 5-720(4) and it understood that sentences of commitment to the DJJ for misdemeanors would still be allowed in probation revocation proceedings. Justice Burke has it exactly backwards. If the legislature had intended that the changes to section 5-710(1)(b) would be *exempt* from section

5-720(4), then the legislature would have had to include such language in section 5-710(1)(b). But the legislature of course would *not* have to include language explaining that section 5-720(4) remains fully operative. If Justice Burke's position is correct, it would mean that every change of sentencing options ever made in section 5-710 conflicts with section 5-720(4), despite the fact that the relevant language of section 5-720(4) exists solely to address such changes. This obviously cannot be correct. Moreover, while it is certainly true that the amended version of section 5-710(1)(b) does not "contain any words of limitation that prohibit its application in probation revocation proceedings" (*infra* ¶ 62), the reason for this is that it *does* apply in probation revocation proceedings. For those juveniles originally sentenced *after* the amendment's effective date, the amended version of section 5-710(1)(b) will apply in any future probation revocation proceedings. For juveniles sentenced *before* the amendment became effective, however, it will not apply at their probation revocation proceedings. See 705 ILCS 405/5-720(4) (West 2016).

¶ 57     The problem with the analysis put forward by Justice Burke is that she reads the statutes to the exclusion of the principles of statutory construction. Justice Burke wants the court to answer the question whether, if section 5-720(4) did not exist, the amended version of section 5-710(1)(b) would apply to respondent's case. But this is an invalid question that yields no useful answer. That is not how courts read statutes. Section 5-720(4) *does* exist, and it precludes the amended version of section 5-710(1)(b) from applying to respondent's case. The court cannot assert a conflict based upon statutory language that the legislature says does not apply to this case. As the appellate court put it perfectly in *In re Detention of Diestelhorst*, 307 Ill. App. 3d 123, 128 (1999), "statutory language is a reliable indicator of true meaning only when it is read in the context of the entire Act." If we simply follow our obligation to read these statutes *in para materia* (*People v. McCarty*, 223 Ill. 2d 109, 133 (2006)), presuming that the legislature amended section 5-710(1)(b) with full knowledge of the existence of section 5-720(4) (*Jones*, 214 Ill. 2d at 199), no one would be able to assert the existence of a conflict.

¶ 58    JUSTICE BURKE, specially concurring:

¶ 59    The majority reaches two major conclusions in this case. First, the majority holds there is no conflict between sections 5-720(4) and 5-710(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/5-710(1)(b), 5-720(4) (West 2016)) and that one "need look no further than the plain language of section 5-720(4)" (*supra* ¶ 29), to determine that section 5-720(4) is the governing provision in this case. Second, the majority holds in the alternative that, even if sections 5-720(4) and 5-710(1)(b) were in conflict, section 5-720(4) is the more specific provision of the two and, for this reason, must be given controlling effect. *Supra* ¶ 34. I write separately because I disagree with the majority's first holding that section 5-720(4) and section 5-710(1)(b) are not in conflict.

¶ 60    In April 2016, the circuit court of Cook County revoked the respondent minor's probation and committed him to the Department of Juvenile Justice (DJJ). Respondent had previously been adjudicated delinquent for committing the misdemeanor offense of criminal trespass to a motor vehicle. At issue in this appeal is whether the circuit court possessed the authority under the Juvenile Court Act to commit respondent to the DJJ for violating his probation.

¶ 61    Resolution of this issue requires us to construe the language of two provisions of the Juvenile Court Act, sections 5-720(4) and 5-710(1)(b). Section 5-720(4) of the Juvenile Court Act provides that, if a court determines that a minor has violated his or her probation, the court may impose any sentence "that was available under Section 5-710 at the time of the initial sentence." 705 ILCS 405/5-720(4) (West 2016). Section 5-720(4) thus incorporates by reference the version of section 5-710 that was in effect at the time the minor was originally sentenced. See, *e.g.*, *People v. Lewis*, 5 Ill. 2d 117, 121 (1955). There is no dispute that, at the time respondent was originally sentenced for his misdemeanor offense, section 5-710 did, in fact, allow for commitment to the DJJ for misdemeanor violations. Thus, under the plain terms of section 5-720(4), respondent could be committed to the DJJ in his probation revocation proceeding.

¶ 62    However, it is also undisputed that as of January 1, 2016, section 5-710(1)(b) of the Juvenile Court Act precludes a court from committing a minor to the DJJ for a

- 19 -

misdemeanor. 705 ILCS 405/5-710(1)(b) (West 2016).[2] The amended section 5-710(1)(b) controls the sentencing of juvenile offenders after its effective date. *Id.* Importantly, this provision makes no distinction between different types of sentencing decisions. It does not state that it applies only to initial sentencing proceedings, and it does not contain any words of limitation that prohibit its application in probation revocation proceedings. On its face, the amended version of section 5-710(1)(b) applies to *all* sentencing decisions after January 1, 2016, including the sentence imposed on respondent as a result of his probation revocation in April 2016.

¶ 63        It is not possible to give effect to both section 5-720(4) and section 5-710(1)(b) in this case. Section 5-720(4) unambiguously states that the circuit court had the authority to commit respondent to the DJJ for the misdemeanor offense of criminal trespass to a motor vehicle. At the same time, section 5-710(1)(b) unambiguously states that the circuit court did not possess that authority. Consequently, the two provisions are in direct conflict.

¶ 64        In holding that there is no conflict between the statutory provisions, the majority and Justice Thomas, in his special concurrence, adopt the State's argument that this court "need look no further than the plain language of section 5-720(4)" to find that the two provisions work in harmony. *Supra* ¶ 29. But this simply is not true. By their plain terms, *both* provisions apply with equal force to the probation revocation proceeding conducted in April 2016. Merely referencing the plain language of section 5-720(4) and ignoring the plain language of section 5-701(1)(b) places significance on the text of one provision to the exclusion of the other without any justification.

¶ 65        There is nothing remarkable about finding that two statutes conflict. It is simply a recognition that each statute, by its plain language, directs different action. The problem is deciding which statute takes precedence—a problem resolved by using canons of statutory construction. See *Moore v. Green*, 219 Ill. 2d 470, 479 (2006).

---

[2]Effective January 1, 2017, Public Act 99-628 amended section 5-710(1)(b) by specifying that commitment to the DJJ is permissible only if the minor was found guilty of a felony offense or first degree murder. Pub. Act 99-628, § 10 (eff. Jan. 1, 2017). However, that amendment does not alter the meaning or effect of section 5-710(1)(b) as it relates to this case.

¶ 66    As the majority correctly notes in its second, alternative holding, one of our well-established rules of statutory construction provides that "[w]here a general statutory provision and a more specific statutory provision relate to the same subject, we will presume that the legislature intended the more specific provision to govern." *Id.* at 480 (citing *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 459 (2002)). The specific provision is construed as an exception to the general provision. *People ex rel. Madigan v. Burge*, 2014 IL 115635, ¶ 31 (citing *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012)).

¶ 67    Application of this rule determines which statute should govern here. The amended section 5-710(1)(b) is the more general statute because it applies to all sentencing proceedings in juvenile cases after January 1, 2016. No words of limitation are included. Section 5-720(4) is the more specific provision because it applies only in probation revocation proceedings and is restricted to that limited type of sentencing decision. Therefore, section 5-720(4) must be construed as an exception to the general terms of amended section 5-710(1)(b).

¶ 68    Moreover, reliance on the general/specific canon defeats any argument that amended section 5-710(1)(b) should govern because it is the more recent provision. If amended section 5-710(1)(b) controls here, it would render a portion of section 5-720(4) meaningless and inoperative. Specifically, it would entirely eliminate the retrospective nature of section 5-720(4) by nullifying the directive that the court must look to the sentences that were available "at the time of the initial sentence." Such an interpretation would amount to repeal by implication. However, repeal by implication is disfavored. *In re Marriage of Lasky*, 176 Ill. 2d 75, 79 (1997). "Courts assume that the legislature will not draft a new law that contradicts an existing one without expressly repealing it, and that the legislature intends a consistent body of law when it amends or enacts new legislation." *Id.* Therefore, the canon that the specific controls over the general applies even when the general provision is the more recent. *Burge*, 2014 IL 115635, ¶ 32 (citing *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976), and *Morton v. Mancari*, 417 U.S. 535, 550-51 (1974)).

¶ 69    Here, amended section 5-710(1)(b) does not expressly repeal section 5-720(4). In the absence of explicit language repealing section 5-720(4), we must assume that the legislature did not intend that result. Thus, the terms of section 5-720(4) apply

in this case and operate as an exception to the modified sentencing options that were adopted in 2016. For this reason, the circuit court possessed the authority to commit respondent to the DJJ.

¶ 70    For the foregoing reasons, I specially concur.

¶ 71    JUSTICE KILBRIDE joins in the special concurrence.