2022 IL App (1st) 220092-U

No. 1-22-0092

Order filed December 15, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *In re* KASANDRA M., a Person Found Subject to Involuntary Medication, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| (The People of the State of Illinois, | ) ) | |
| Petitioner-Appellee, | ) ) | No. 21 COMH 2864 |
| v. | ) ) | |
| Kasandra M., | ) ) | Honorable Maureen O. Hannon, |
| Respondent-Appellant). | ) ) | Judge, presiding. |

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court.
Justices Rochford and Martin concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Patient's appeal is moot where the trial court's judgment was limited to 90 days, which has passed, and patient failed to clearly establish the criteria necessary to satisfy either (1) the public interest exception or (2) the capable of repetition, yet evading review exception to the mootness doctrine.

¶ 2     Respondent Kasandra M. is an individual with a brief history of mental illness. On July 8,

2021, Dr. Nicolas Lescano petitioned the circuit court, pursuant to section 2-107.1(a-5) of the

Mental Health and Disabilities Code (Code) (405 ILCS 5/2-107.1(a-5) (West 2020)), to allow him to administer psychotropic medication to Kasandra for up to 90 days. After hearing the testimony of Dr. Lescano and Kasandra's daughter, Aniya, the trial court granted the petition. Kasandra appeals the trial court's decision, arguing that (1) the trial court failed to comply with the Code by not requiring the State to present clear and convincing evidence that the testing requested was "essential for the safe and effective administration of the treatment" and (2) the case is not moot because review is warranted under two exceptions to the mootness doctrine.

¶ 3    We dismiss the appeal as moot where no exception to the mootness doctrine applies.[1]

¶ 4                                    I. BACKGROUND

¶ 5    On August 12, 2021, a hearing was held on Dr. Lescano's petition. Aniya testified that she is Kasandra's daughter. Aniya lived with Kasandra until September 2020. Around that time Kasandra began to act different, which Aniya attributed to a relationship. In November 2020 Aniya had to pick up her little brother because Kasandra had called the police and made a report that her son was coming to hurt her. In March 2021 Kasandra was hospitalized based on concerns the police had. Kasandra had walked from Park Forest to Joliet despite having a car. Kasandra accused Aniya and her brother of stealing the car, which was untrue. The last time Aniya saw her mother was when she was following Aniya in April 2021. Aniya visited Kasandra's home in July 2021 and found the home badly burned. Kasandra told Aniya that someone was "bothering" and "messing" with her. Kasandra also said that they beat her, slammed her, and put a bag over her

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

head. While at Hartgrove Hospital, Kasandra told Aniya that she was injected with fentanyl. Kasandra also said that a man had come in her room and tried to rape her.

¶ 6    Dr. Lescano testified that he was a physician specializing in psychiatry at Hartgrove Hospital. Kasandra was admitted to Hartgrove under Dr. Lescano's care on July 6, 2021. Dr. Lescano initially examined Kasandra on July 7. Kasandra had also been hospitalized at Hartgrove at the end of June for 6 days.

¶ 7    Dr. Lescano testified that Kasandra suffered from a serious mental illness, schizophrenia. Kasandra was currently symptomatic. She was experiencing paranoid delusions, grandiose delusions, and somatic delusions. Kasandra believed she was pregnant despite multiple negative tests. Kasandra also believed she was a healer, a psychic, and a prophet. Kasandra would state that various staff members were against her and would attack her for no reason. This made Kasandra easily agitated. Kasandra was also very paranoid, which Dr. Lescano described as very guarded and suspicious. Kasandra exhibited symptoms every day. She would not acknowledge that she has a mental illness. Dr. Lescano opined that Kasandra had deteriorated significantly from her recent admission. Dr. Lescano further opined that Kasandra was exhibiting threatening behavior. Kasandra was also exhibiting suffering behavior, as indicated by her body posture and distressed tone of voice. Kasandra appeared to be in constant distress.

¶ 8    Dr. Lescano then referred to an addendum containing the potential medications and testing. Dr. Lescano proceeded medication by medication, describing the benefits and side effects of each. Kasandra had been given the risk and benefit information in written form. Kasandra did not have the capacity to make a reasoned judgment about the proposed treatment because she denied any mental health problems and could not see the problems with her behavior. Less restrictive

treatments had been explored without success. The State then began asking Dr. Lescano about laboratory and other tests listed in the addendum. The State asked Dr. Lescano to go test by test and state why each was needed to administer the treatment safely and effectively. The court interjected, stating:

> And I am just going to say, I don't need him to go through each one. If he wants to state what they are and then identify whether there are any side effects. I have heard the testimony, you know, in so many cases that I don't need to know why he needs to order these tests. But just name them and then any side effects that would be harmful to her would be ideal.

Dr. Lescano then listed the tests from the addendum and added that there were no potential side effects from any of the tests.

¶ 9    Dr. Lescano concluded that Kasandra's prognosis would be poor without the proposed treatment. Dr. Lescano's plan was to stabilize Kasandra on monotherapy and proceed to a combination of different medications as a second step only if necessary. If effective, Dr. Lescano would then administer a long-acting injectable prior to discharge. Dr. Lescano would then discuss aftercare with Kasandra and her family.

¶ 10    Both parties waived closing argument. The trial court found that the State had proved by clear and convincing evidence that (1) Kasandra had a mental illness, specifically schizophrenia, (2) Kasandra was exhibiting paranoid behavior not grounded in reality, (3) Kasandra had been on a downward progression from June to July 2021, (4) Kasandra lacked the capacity to make a reasoned decision about her treatment, and (5) less restrictive measures had been considered but

were inappropriate. The trial court granted the medication petition for a period not to exceed 90 days. The order was entered on August 12, 2021.

¶ 11    After requesting an extension of time, Kasandra filed a motion to reconsider on October 13, 2021. Kasandra argued that the State had not presented sufficient evidence to prove that the requested tests were essential for the safe and effective administration of the medications.  Instead, Dr. Lescano simply listed the tests and stated that there were no side effects. The State responded that the issue was moot because the 90 days had expired, the issue was waived because there was no objection to the trial court's instruction to Dr. Lescano to list the tests and whether there were side effects, and the issue did not meet the criteria for a motion to reconsider.

¶ 12    The trial court denied the motion for reconsideration on December 22, 2021. The trial court considered the lack of an objection from Kasandra's counsel during the petition hearing to be "somewhat of a stipulation." The trial court noted that Kasandra's motion was filed far enough into the 90-day period that meaningful relief was not obtainable. The court stated that it appreciated Kasandra bringing the issue to the court's attention. The court concluded that it was "certainly not going to do that again" unless there was an express stipulation.

¶ 13    Kasandra filed her notice of appeal on January 20, 2022. This court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1980, art. VI, § 6) and Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303(a) (eff. July 1, 2017), governing appeals from a final judgment of a circuit court in a civil case.

¶ 14                                II. ANALYSIS

¶ 15    Respondent argues that the trial court violated the Code by not requiring the State to present evidence on one of the seven required statutory factors. The Code strictly limits when involuntary treatment may be administered. Section 2-107.1(a-5)(4) of the Code provides:

"(4) Psychotropic medication and electroconvulsive therapy may be administered to the recipient if and only if it has been determined by clear and convincing evidence that all of the following factors are present. ***

(A) That the recipient has a serious mental illness or developmental disability.

(B) That because of said mental illness or developmental disability, the recipient currently exhibits any one of the following: (i) deterioration of his or her ability to function, as compared to the recipient's ability to function prior to the current onset of symptoms of the mental illness or disability for which treatment is presently sought, (ii) suffering, or (iii) threatening behavior.

(C) That the illness or disability has existed for a period marked by the continuing presence of the symptoms set forth in item (B) of this subdivision (4) or the repeated episodic occurrence of these symptoms.

(D) That the benefits of the treatment outweigh the harm.

(E) That the recipient lacks the capacity to make a reasoned decision about the treatment.

(F) That other less restrictive services have been explored and found inappropriate.

(G) If the petition seeks authorization for testing and other procedures, that such testing and procedures are essential for the safe and effective administration of the treatment." 405 ILCS 5/2-107.1(a-5)(4) (West 2020).

¶ 16     Respondent's argument focuses on element (G). Respondent argues that the trial court essentially relieved the State of its burden to prove "by clear and convincing evidence" that the requested testing and procedures were "essential for the safe and effective administration of the

treatment." When the State asked Dr. Lescano to tell the trial court what each proposed test was and why it was needed to administer the proposed medications safely and effectively, the trial court stated that it did not need Dr. Lescano "to go through each one." The trial court continued that Dr. Lescano could just identify the requested tests and if there were side effects because the trial court had heard testimony about the tests in "so many cases." Respondent concludes that the trial court's "directive contravenes the Mental Health Code's requirement for clear and convincing evidence about each statutory factor."

¶ 17    The State responds that respondent has waived review of the issue because no objection was made when the trial court told Dr. Lescano that he could limit his testimony to naming the requested tests and any side effects. The State continues that the issue is moot and neither of respondent's proposed exceptions to the mootness doctrine is applicable. Finally, the State argues that the trial court's involuntary medication order is not against the manifest weight of the evidence.

¶ 18    "An appeal is moot if no actual controversy exists or if events have occurred that make it impossible for the reviewing court to grant the complaining party effectual relief." *In re Marriage of Peters-Farrell*, 216 Ill. 2d 287, 291 (2005). As respondent acknowledges, the order she is challenging was only effective for 90 days, which has long since passed. Thus, the issue is moot because we could not grant respondent any meaningful relief.

¶ 19    The general rule is that reviewing courts will not decide moot questions. *In re Jarquan B.*, 2017 IL 121483, ¶ 17. However, "we will consider an otherwise moot case where it falls under a recognized exception." *Id.* Respondent urges us to review the case under both the public interest and capable of repetition, yet evading review exceptions to the mootness doctrine. As discussed more fully below, neither exception warrants our review of this case.

¶ 20 "The public interest exception allows a court to consider an otherwise moot case when (1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question." *In re Alfred H.H.*, 233 Ill. 2d 345, 355 (2009). The public interest exception is "narrowly construed" and a "a clear showing of each criterion is required to bring a case within its terms." *In re Adoption of Walgreen*, 186 Ill. 2d 362, 365 (1999). We recognize that many courts have characterized the issue respondent presents as one of "statutory compliance" with the Mental Health Code, which presents a matter of "substantial public interest." See *In re Donald L.*, 2014 IL App (2d) 130044, ¶¶ 20-21.

¶ 21 However, respondent cannot meet either the second or third criterion of the public interest exception. The issue presented here is not one of a constitutional dimension nor does it involve statutory interpretation. Contra *In re A Minor*, 127 Ill. 2d 247, 257 (1989) (deciding to review the issue under the public interest exception where it was "desirable that circuit court judges receive guidance as to the constitutionality" of the challenged statutory provision). The law in this area is not in "disarray" and there is no "conflicting precedent" on the issue respondent raises. See *Walgreen*, 186 Ill. 2d at 365-66.

¶ 22 The issue as respondent presents it is whether "the circuit court failed to follow the Mental Health Code when it granted a petition for psychotropic medication absent evidence of a statutory element that the court directed the State to omit because the court had heard the evidence in 'so many' other cases." The answer to that question is clearly yes. As discussed above, the statute requires clear and convincing evidence on each of the seven enumerated factors. A trial court is not allowed to remove the State's burden of proof or rely on testimony from other cases to find the necessary clear and convincing evidence. "We have not found, and the parties have not cited, any

conflicting precedents that would require us to issue an advisory opinion to make an authoritative resolution of the issue." *In re Marriage of Eckersall*, 2015 IL 117922, ¶ 16.

¶ 23 There is also not a likelihood that this specific issue will recur. As just discussed, the statute is clear on the issue respondent raises. The trial court below seemed to recognize that its approach was less than ideal once the issue was raised, albeit after meaningful relief could have been granted. The trial court stated that it thought respondent's counsel's silence in the wake of the trial court's direction to Dr. Lescano served as a stipulation that the tests were necessary for the safe and effective administration of the medications. The trial court continued that it did not "want to get close to that line ever again." The court continued that it was "certainly" not going to proceed in the same manner again without an express stipulation. There is no evidence that this issue is likely to recur. Because the second and third criterion are not present in this case, we decline to review the issue under the public interest exception.

¶ 24 The capable of repetition, yet evading review exception applies where "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again." *In re Barbara H.*, 183 Ill. 2d 482, 491 (1998). Respondent has met the first element because the order was limited to 90 days and, thus, it could not have been fully litigated prior to its cessation. *Alfred H.H.*, 233 Ill. 2d at 358.

¶ 25 However, respondent has not met the second element for a few reasons. First, there is no evidence that respondent has ever previously been the subject of an involuntary medication petition. Dr. Lescano testified that he was unaware of whether respondent had ever been prescribed any of the psychotropic medications listed in the petition. Also, respondent had been released from

the hospital and was apparently no longer receiving psychotropic medications as of the October 27, 2021, court date, which was before the expiration of the 90-day order. Second, at bottom, respondent's claim is a sufficiency of the evidence claim with a twist that the trial court intervened as the State attempted to present its case. The merits or lack thereof of any future petition will depend solely on the evidence presented at that hearing.

¶ 26    Finally, as discussed above, the Code is clear on the issue respondent presents. Psychotropic medication may only be administered "if it has been determined by clear and convincing evidence that all" seven of the enumerated factors are present. 405 ILCS 5/2-107.1(a-5)(4) (West 2020). To decide the issue respondent presents, in the reply brief described as "whether a trial court's authorization of testing and procedures absent evidence may be condoned," we would merely need to cite the statute. It is not clear how our resolution of the issue respondent presents would be any more useful to respondent in future litigation compared to the Code's language itself. *Alfred H.H.*, 233 Ill. 2d at 360.

¶ 27                                         III. CONCLUSION

¶ 28    For the foregoing reasons, we dismiss the appeal as moot.

¶ 29    Dismissed.