2021 IL App (1st) 201140

SIXTH DIVISION
December 3, 2021

No. 1-20-1140

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| JOSEPH IMPROTA, | ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) | |
| v. | ) | Nos. 18 CH 10396 & 20 CH 587 |
| JESSE WHITE, as Secretary of State, State of Illinois, | ) | The Honorable David B. Atkins, Judge, presiding. |
| Defendant-Appellant. | ) | |

PRESIDING JUSTICE PIERCE delivered the judgment of the court, with opinion.
Justices Harris and Mikva concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, Joseph Improta, purchased a 2017 Subaru WRX from an Illinois used car dealer on January 8, 2018. Plaintiff applied for a vehicle title in Illinois. Defendant, Jesse White, in his capacity as the Secretary of State, denied the application because a required statutory database search showed the State of Texas branded the car "junk" in October 2017 due to flood damage.[1]

_____

[1]The record before us is silent as to the cause of the flood damage. We note, however, that in August 2017, Hurricane Harvey made landfall on the southeast coast of Texas, resulting in major flooding in Houston, where the vehicle was repeatedly serviced prior to being declared a total loss on August 27, 2017. Reports estimated that as many a 1 million vehicles were destroyed by Hurricane Harvey. See https://www.caranddriver.com/features/a18370403/hurricane-harvey-destroyed-more-vehicles-than-any-single-event-in-america-this-is-the-aftermath-feature/ (last visited Nov. 22, 2021). Our legislature amended the definition of "junk vehicle" on August 25, 2017. See Pub. Act. 100-450 (amending 625 ILCS 5/1-134.1 (eff. Jan. 1, 2018)).

Plaintiff requested a hearing on his title rejection. Evidence at the hearing showed the car was sold at an auction in Houston, Texas in November 2017. In December 2017, the State of New Hampshire issued the vehicle a rebuilt title after it passed various inspections required by New Hampshire. The hearing officer recommended upholding the denial. The Secretary agreed and issued a junk title. On administrative review, the circuit court of Cook County reversed and remanded. On remand, the Secretary again affirmed the denial based on the earlier Texas determination of junk vehicle status and the mandatory language contained in section 3-104.5(c) of the Illinois Vehicle Code (65 ILCS 5/3-104(c) (West 2018)), and further found that plaintiff's application for a rebuilt title in Illinois was insufficient. Plaintiff again sought administrative review. The circuit court reversed and directed the Secretary to issue plaintiff a vehicle title. The Secretary appeals. We reverse the circuit court's judgment and affirm the Secretary's final order.

¶ 2                                    I. BACKGROUND

¶ 3      On January 8, 2018, plaintiff purchased a 2017 Subaru WRX from Island City Auto Broker's, Inc., an Illinois used car dealer, for $14,000, plus $980 in sales tax, and $196 in title and plate fees. Island City disclosed to plaintiff, in writing, that the vehicle had a December 2017 certificate of title from New Hampshire showing the vehicle had been rebuilt, and plaintiff signed the disclosure form. The New Hampshire title reflected the vehicle had previously been titled in Texas as "water/flood damaged." Island City applied for an Illinois rebuilt title on plaintiff's behalf and disclosed the car's rebuilt status. Pursuant to section 3-104(*o*) of the Vehicle Code (65 ILCS 5/3-104(*o*) (West 2018)), the Secretary verified the car's history through the National Motor Vehicle Title Information System (NMVTIS). The NMVTIS report showed Texas had branded the car as "junk" on October 11, 2017. Specifically, the report stated:

"The vehicle is incapable of safe operation on the roads or highways and has no resale value except as a source of parts or scrap, or the vehicles [*sic*] owner has irreversibly designated the vehicle as a source of parts or scrap. This vehicle shall never be titled or registered. Also known as a non-repairable, scrapped, or destroyed."

The report also showed that on December 20, 2017, the car was branded "rebuilt" by New Hampshire. Specifically, the report stated "The vehicle, previously branded 'salvage[,'] has passed anti-theft and safety inspections, or other jurisdiction procedures, to ensure the vehicle was rebuilt to required standards. Also known as prior salvage (salvaged)."

¶ 4    The Secretary's investigation included a Carfax report indicating an insurance company in August 2017 declared the car a total loss by reported flood damage . The Carfax report showed the car was sold at a salvage auction, and a new owner was reported in New Hampshire, where a flood damage title and rebuilt title were issued.

¶ 5    The Secretary denied plaintiff's vehicle title application. In a March 13, 2018, denial letter, the Secretary explained that the NMVTIS verification showed the vehicle had previously been designated as junk and the junk designation was valid. Plaintiff requested an administrative hearing. The Secretary sent a notice setting the matter for a hearing on April 10, 2018, before a hearing officer, Timothy A. Armstrong. The notice of hearing also indicated that the Secretary denied plaintiff's application for a title based on sections 3-104.5 and 3-118.1 of the Vehicle Code (625 ILCS 5/3-104.5, 118.1 (West 2018)).

¶ 6    Plaintiff gave the following testimony. He owned and operated an auto parts store in Illinois for more than 30 years, and had owned over 100 vehicles, including vehicles with rebuilt titles. He did not investigate the vehicle's history before purchasing it. Island City provided him with the

New Hampshire title disclosing the car was rebuilt. The New Hampshire title did not disclose the car had been branded junk by Texas. He knew the car incurred flood damage. He did not think the New Hampshire rebuilt title would affect his ability to title the car in Illinois because he had purchased and titled rebuilt vehicles before and received Illinois titles. After receiving the Secretary's March 13, 2018, denial, the vehicle passed an Illinois Department of Transportation (IDOT) safety inspection. If he did not receive a title for the car, it would have no value to him other than for parts and scrap.

¶ 7    Plaintiff's counsel argued the New Hampshire title should take precedence over the Texas title and argued the car had passed an IDOT safety inspection. He argued the denial of title in Illinois was unconstitutional for failing to give full faith and credit to the New Hampshire rebuilt title and constituted a deprivation of property without just compensation.

¶ 8    The Secretary presented his investigation documents, including the NMVTIS and Carfax reports, and argued there was no evidence contradicting Texas's junk designation. The hearing officer took the matter under advisement.

¶ 9    On July 13, 2018, the hearing officer issued his findings and recommendations. The hearing officer found the vehicle had a rebuilt title from New Hampshire with a notation "rebuilt vehicle," and "water/flood damaged." The Secretary's NMVTIS check revealed that the State of Texas had branded the vehicle junk, and the Secretary denied the application for title based on the junk status. The hearing officer found the only "exception to the NMVTIS statute *** is when a vehicle was previously issued a rebuilt/salvage title (prior to the NMVTIS system) in Illinois, and petitioner who seeks to have the title transferred to him/her is able to prove that it is safe operable [*sic*] and roadworthy." The Vehicle Code, however, contained a bright line rule that "vehicles brought into Illinois that were, at any time, classified as junk will not be issued a rebuilt/salvage

4

title." The hearing officer concluded that plaintiff had not met his burden of establishing that the vehicle was not junk under section 1-134.1 of the Vehicle Code, and recommended the Secretary affirm his denial of plaintiff's application. The Secretary adopted the hearing officer's findings of fact, conclusions of law, and recommendation, and entered a final order affirming the issuance of a junk title for plaintiff's vehicle.

¶ 10     Plaintiff timely sought administrative review in the circuit court in case No. 18 CH 10369. In addition to seeking administrative review of the Secretary's final order, plaintiff asserted section 3-104.5 of the Vehicle Code was unconstitutional for failing to give full faith and credit to titles issued by other states, discriminated against out-of-state commerce by imposing an undue burden on interstate commerce, and violative of due process. The circuit court dismissed plaintiff's constitutional claims with prejudice, and they are not part of this appeal.

¶ 11     On August 15, 2019, after briefing, the circuit court entered a written order reversing the Secretary's decision and remanding for further consideration. The circuit court made the following findings. Sections 3-104.5 and 3-301 both use the mandatory language "shall" with respect to the Secretary's titling obligation: section 3-104.5 required the Secretary to issue a junk certificate based on Texas's junk title, and section 3-301 required the Secretary to issue a rebuilt title provided the vehicle passed a section 3-308 inspection. The Secretary's "conclusion that it should be allowed to adhere to one section of the [Vehicle Code] without adhering to another is a mistake." The Secretary's "application of section 3-104.5 is clearly erroneous in light of the [Vehicle Code's] definition of 'junk vehicle,' " since the vehicle was operational and there was no evidence that the vehicle had been "dismantled, crushed, compressed, flattened[,] or otherwise reduced to a state in which it can no longer be returned to an operable state." The Secretary "committed clear error in making its decision." The circuit court ordered, "The decision of the [Secretary] is reversed and

5

remanded for further consideration of [p]laintiff's Certificate of Title application, pursuant to 625 ILCS 5/3-301."

¶ 12     On December 12, 2019, the hearing officer—without any additional briefing or hearings—issued amended findings of fact and conclusions of law. The hearing officer found plaintiff purchased the vehicle nine days after the Illinois legislature amended the definition of "junk vehicle" to include any vehicle "branded or assigned as junk or a similar designation by another state or jurisdiction." 65 ILCS 5/1-134.1 (West 2018). Under federal law, the Texas junk brand could not be deleted, and the New Hampshire title did not in any way affect the Texas junk brand. Even if Texas retracted the junk brand, plaintiff would need to prove the vehicle was road worthy, and plaintiff did not provide the Secretary any evidence other than the IDOT inspection that occurred after his title application was denied. Plaintiff "did not provide *** bills of sale, receipts for the list of parts used to rebuild the vehicle[,] or the identification number of the vehicle(s) from which the parts originated" as required by section 3-303 of the Vehicle Code (65 ILCS 5/3-303 (West 2018)). The hearing officer concluded the Texas junk brand required the issuance of a junk certificate in Illinois. In a December 12, 2019, supplemental order, the Secretary adopted the hearing officer's amended findings of fact, conclusions of law, and recommendation, and affirmed the issuance of a junk title.

¶ 13     On January 7, 2020, plaintiff filed a petition for rule to show cause in the circuit court in case No. 18 CH 10369 against the Secretary and the hearing officer, or alternatively, to enforce the circuit court's August 15, 2019, order. Plaintiff asserted the Secretary and hearing officer "blatantly refused to comply" with the circuit court's August 15, 2019, order by again finding the vehicle was junk, despite the circuit court's contrary finding. Plaintiff requested the circuit court order the Secretary and hearing officer show cause as to why they should not be held in contempt,

and further requested the circuit court instruct the hearing officer to enter an order consistent with the circuit court's August 15, 2019, order.

¶ 14     On January 16, 2020, plaintiff filed another complaint for administrative review in case No. 20 CH 587 seeking review of the Secretary's December 12, 2019, supplemental order. Although plaintiff disputed the validity of the order, he filed his complaint "to preserve his rights." In count I, he sought a judgment declaring the December 12, 2019, supplemental final order "void and of no force or effect," and requested attorney fees and costs under Supreme Court Rule 137 (eff. Jan. 1, 2018). Count II sought judicial review of the Secretary's supplemental final order. The circuit court consolidated case Nos. 18 CH 10369 and 20 CH 587.

¶ 15     On September 21, 2020, after briefing, the circuit court denied plaintiff's petition for a rule to show cause, denied the Secretary's motion to dismiss, and reversed the Secretary's supplemental final order. The circuit court found the Secretary incorrectly interpreted the circuit court's prior order "to mean that the [c]ourt merely disagreed with [the Secretary's] finding, and that [the Secretary] could affirm its own decision so long as it 'considered' [the circuit court's] August 15, 2019 [o]rder." The circuit court clarified that its prior order "makes perfectly clear" that the Secretary erred by denying plaintiff's application for a vehicle title. The circuit court criticized the Secretary's interpretation of "the phrase 'for further consideration' to mean that [the circuit court's] reversal of the administrative decision was seemingly conditional upon [the Secretary] agreeing with the [circuit] [c]ourt's finding." The circuit court refused to find the Secretary in contempt because the circuit court's order "provided [the Secretary] with just enough ambiguity to possibly misinterpret the August 15, 2019 [o]rder." The circuit court ordered the Secretary to issue plaintiff a certificate of title for the vehicle.

¶ 16     The Secretary filed a timely notice of appeal.

¶ 17                                    II. ANALYSIS

¶ 18     On appeal, the Secretary argues its decision to deny plaintiff a vehicle title was not clearly erroneous where the vehicle had previously been branded "junk" by the State of Texas—which satisfied the definition of "junk vehicle" under section 1-134.1 of the Vehicle Code—thereby triggering Section 3-104.5(c)'s requirement that the Secretary issue a junk title. The Secretary also raises arguments directed at plaintiff's constitutional claims, but we have no need to address the Secretary's constitutional arguments because plaintiff has not cross-appealed the dismissal of those claims and they are not before us.

¶ 19     We first address a jurisdictional argument raised by plaintiff. He asserts the circuit court's August 15, 2019, order reversing and remanding the Secretary's final administrative order was a final and appealable order, and the Secretary did not file a notice of appeal within 30 days of August 15, 2019. In his view, all that was left to do following the circuit court's remand was for the Secretary to issue a rebuilt title. We disagree.

¶ 20     " 'A circuit court's remand to an administrative agency is a nonfinal order if the agency must do more than enter a judgment or decree in accordance with the court's directions.' " *Hooker v. Retirement Board of Firemen's Annuity & Benefit Fund of Chicago*, 391 Ill. App. 3d 129, 136 (2009) (quoting *Lippert v. Property Tax Appeal Board*, 273 Ill. App. 3d 150, 153 (1995)). "[W]hen a circuit court remands a case to an administrative agency for further proceedings, the circuit court retains jurisdiction until the circuit court examines the results of the [administrative agency] proceedings." *Id.* at 137 (citing *Wilkey v. Illinois Racing Board*, 96 Ill. 2d 245, 249 (1983)).

¶ 21     Here, the circuit court's August 15, 2019, order was nonfinal because it remanded the case to the Secretary "for further consideration of [p]laintiff's Certificate of Title application, pursuant to 625 ILCS 5/3-301." The order clearly contemplated additional consideration of the facts and the

law by the Secretary. The circuit court may have found that the Secretary clearly erred by finding that the vehicle was junk, but the circuit court's August 15, 2019, order did not direct the Secretary to issue a rebuilt title and contained no discussion as to whether plaintiff's title application satisfied all the criteria for a rebuilt title under section 3-301 of the Vehicle Code—a task the circuit court expressly left to the Secretary. On remand, the Secretary did as he was instructed, and concluded that not only was the vehicle junk, but that plaintiff's application for a certificate of title was insufficient. The parties then returned to the circuit court for review of the Secretary's supplemental final order, which the circuit court reversed with instructions that the Secretary issue a certificate of title. The Secretary filed a notice of appeal within 30 days of the circuit court's September 21, 2020, order instructing the Secretary to issue a certificate of title. We reject plaintiff's argument—and the circuit court's view expressed in the September 21, 2020, order— that the August 15, 2019, order was a final and appealable order, as it did not fully resolve the issue of whether plaintiff was entitled to a certificate of title. We find the Secretary's notice of appeal was timely and we have jurisdiction over the Secretary's appeal.[2]

¶ 22    Next, we address the Secretary's decision to deny plaintiff's application for a vehicle title and the issuance of a junk title. On administrative review, we review the administrative agency's final decision rather than the circuit court's judgment. *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 386 (2010). Our standard of review depends on the issues raised. *Lopez v. Dart*, 2018 IL App (1st) 170733, ¶ 67. Conclusions on questions of law, such as the construction of a statute, are reviewed *de novo*. *Horsehead Corp. v. Department of Revenue*, 2019 IL 124155, ¶ 27; *Parikh v. Division of Professional Regulation of the Department of Financial & Professional Regulation*, 2014 IL App (1st) 123319, ¶ 19. Questions of fact are

---

[2]Based on our finding, we do not reach the parties' arguments regarding whether the revestment doctrine applies.

reviewed under the manifest weight of the evidence standard. *Provena*, 236 Ill. 2d at 386-87. Mixed question of law and fact are reviewed under the "clearly erroneous" standard. *Horsehead*, 2019 IL 124155, ¶ 27. "Under that standard, the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard or whether the rule of law as applied to the established facts is or is not violated." *Id.*

¶ 23   Here, the relevant facts are undisputed, and neither party takes any issue with the Secretary's factual findings. The issue here is whether the Secretary properly found plaintiff was not entitled to a vehicle title because Texas previously branded the vehicle as junk. To the extent that resolving this appeal requires us to construe the Vehicle Code, we do so *de novo*. We review the Secretary's decision that the vehicle met the section 1-134.1 "junk vehicle" definition under the clearly erroneous standard.

¶ 24   The Secretary argues he correctly applied the Vehicle Code and his decision to deny plaintiff's application for a vehicle title was not clearly erroneous. He contends plaintiff's vehicle was a "junk vehicle" under section 1-134.1 because the State of Texas branded the car junk, and section 3-104.5(c) of the Vehicle Code required him to issue a junk title and deny plaintiff's application. We agree.

¶ 25   We first examine the Vehicle Code. "The cardinal rule in construing a statute is to ascertain and give effect to the legislative intent." *In re Jarquan B.*, 2017 IL 121483, ¶ 22. The plain and ordinary meaning of the statutory language is the best indicator of that intent. *Id.* We read statutes as a whole and in light of all the other provisions. *Id.* Where the statutory language is unambiguous, we avoid resorting to other canons of statutory construction. *Id.*

¶ 26   Section 3-104(*o*) of the Vehicle Code provides "Each application for certificate of title for a motor vehicle shall be verified by the National Motor Vehicle Title Information System

(NMVTIS) for a vehicle history report prior to the Secretary issuing a certificate of title." 625 ILCS 5/3-104(*o*) (West 2018). The legislature's use of the term "each" in connection with the term "application for a certificate of title" indicates an expansive reach: the Secretary is required to verify all applications for a certificate of title through the NMVTIS, including applications for a rebuilt title. The record shows the Secretary verified the vehicle history report through the NMVTIS, and the report showed that Texas branded the vehicle "junk" on October 11, 2017, and New Hampshire branded the vehicle "rebuilt" on December 20, 2017.

¶ 27    Section 3-104.5 makes plain that "[a]ny motor vehicle application for a certificate of title or a salvage certificate that is returned with a NMVTIS warning or error indicating that another state has previously issued a title or brand indicating the status of the motor vehicle is equivalent to a junk vehicle, as defined in Section 1-134.1 of this Code, shall be issued a junk certificate" where the previous title or brand was issued in the 10 years preceding the application. *Id.* § 3-104.5. Section 3-104.5's use of the term "any" in connection with the term "motor vehicle application for a certificate of title," given its plain and ordinary meaning, is all inclusive and includes applications for a certificate of title for rebuilt vehicles. The Secretary must verify all title applications through NVMTIS for "warnings or errors" indicating a prior "title or brand indicating the status of the motor vehicle is equivalent to a junk vehicle," a term defined by section 1-134.1 of the Vehicle Code. Section 3-104.5 mandates that where a NVMTIS warning or error indicates a prior junk designation, the Secretary "shall" issue a junk title.

¶ 28    Here, the NVMTIS report showed Texas branded the vehicle "junk" on October 11, 2017, and the Secretary was required to determine whether the vehicle met the section 1-134.1 of the Vehicle Code definition of "junk vehicle." The version of section 1-134.1 in effect at the time plaintiff purchased the vehicle and applied for a vehicle title defines "junk vehicle" as "a vehicle

which has been or is being disassembled, crushed, compressed, flattened, destroyed or otherwise reduced to a state in which it no longer can be returned to an operable state, *or has been branded or assigned as junk or a similar designation by another state or jurisdiction*." (Emphasis added.) *Id.* § 1-134.1. Section 1-134.1 presents alternative analyses for determining whether a vehicle is junk: a vehicle will be considered junk if it is in a condition specifically enumerated—disassembled, crushed, compressed, flattened, destroyed, or otherwise reduced to an irrevocably inoperable state—or if another jurisdiction branded the vehicle junk or a similar designation. A plain reading of the statutory language shows that even if the vehicle does not satisfy the enumerated criteria, it will still be deemed junk if another jurisdiction previously branded or assigned a junk designation within the last ten years. From this, we can determine that our legislature made a policy decision to protect Illinois consumers by not issuing an Illinois title for vehicles branded or assigned junk designations by other jurisdictions. Prohibiting the titling of vehicles previously branded junk by a foreign jurisdiction ultimately protects Illinois consumers by reducing fraud and protects the public at large by keeping unsafe vehicles off the road.[3]

¶ 29 Here, it is indisputable that Texas branded the vehicle as "junk" in October 2017. The record before the Secretary showed a junk branding by Texas, and there was nothing in the record that would call into question the validity of Texas's junk designation. The vehicle here plainly met the Illinois definition of junk vehicle because Texas branded the vehicle junk within the 10 years prior to plaintiff's application for a certificate of title in Illinois.

¶ 30 Plaintiff argues, however, that he is entitled to a rebuilt title under section 3-301 of the Vehicle Code (*id.* § 3-301) because New Hampshire issued the vehicle a rebuilt title after the

_____

[3]For example, "title washing" is a practice where a seller attempts to hide a vehicle's history by removing a vehicle's brand by titling the vehicle in a state that does not recognize that brand, physically altering a vehicle title, or simply applying for a vehicle title without disclosing the vehicle's history. See https://www.carfax.com/press/what-is-title-washing (last visited November 22, 2021).

vehicle was branded junk by Texas. He asserts that New Hampshire's rebuilt title conclusively shows the vehicle is not junk, and that section 3-301 should control where a vehicle has been issued a rebuilt title after being branded junk. We disagree.

¶ 31    Plaintiff's argument presupposes that the Vehicle Code permits titling of vehicles previously titled or branded junk. It does not. Instead, a plain reading of the Vehicle Code specifically instructs the Secretary to verify all vehicle applications through the NMVTIS and to issue a junk certificate to any vehicle previously issued a title or brand equivalent of a junk vehicle as defined by Illinois law. The legislature could have easily made an exception for a previously titled junk vehicle later titled as rebuilt or salvage by any jurisdiction at any time, but it did not. Nothing in the Vehicle Code contemplates titling a previously designated or branded "junk vehicle," as defined by Illinois law, regardless of whether there is an intervening title from another jurisdiction.

¶ 32    Plaintiff argues that the New Hampshire rebuilt title "triggered" the applicability of section 3-301 of the Vehicle Code governing rebuilt titles in Illinois. Section 3-301(a) provides,

> "For vehicles 8 model years of age or newer, the Secretary of State shall issue a new certificate of title to any rebuilt vehicle or any vehicle which previously had been titled as salvage in this State or any other jurisdiction upon the successful inspection of the vehicle in accordance with Section 3-308 of this Article." *Id.* § 3-301(a).

Plaintiff contends that section 3-104.5(c) may require a junk certificate for vehicles previously branded junk, but "does not speak to how the vehicle should be treated if it is later rebuilt." He insists section 3-104.5(c) conflicts with section 3-301 and that section 3-301 requires the issuance

of a rebuilt title to vehicles previously titled as junk but later retitled as rebuilt or salvage by a foreign jurisdiction.

¶ 33    We find that the Vehicle Code *does* address titling vehicles once branded junk and later titled rebuilt by a foreign jurisdiction. Under the plain and unambiguous language of section 3-104.5(c), Illinois does not permit titling of vehicles previously branded junk; the subsequent titling history of the vehicle is simply not relevant. Here, plaintiff's title application did not pass the screening phase set forth in section 3-104.5(c), and there was no requirement for the Secretary to evaluate plaintiff's application under section 3-301.[4]

¶ 34    The Court of Appeals of Indiana reached a similar conclusion in *Indiana Bureau of Motor Vehicles v. Majestic Auto Body*, 128 N.E.3d 466 (Ind. Ct. App. 2019). There, an Indiana auto body shop purchased two vehicles at an auction in Texas. *Id.* at 467. The NMVTIS report showed the vehicles were damaged in Hurricane Harvey and the vehicles were " 'incapable of safe operation for use on the roads or highways and [have] no resale value except as a source of parts or scrap.' " (Alteration in original.) *Id.* The State of Texas designated the vehicles junk and issued salvage certificates. *Id.* at 468. The Indiana State Police inspected the vehicles and concluded the vehicles were in good condition, and the auto body shop applied to obtain clean titles. *Id.* The trial court ultimately ordered the Indiana Bureau of Motor Vehicles (BMV) to issue salvage titles for the vehicles. *Id.* The trial court denied the BMV's subsequent motion to vacate, and the BMV

---

[4]We note the Secretary's supplemental final order found that plaintiff's application for a rebuilt title was not accompanied by any of the documentation required by section 3-303—which requires a salvage certificate or previously issued out-of-state title for the rebuilt vehicle; "bills of sale and other documents evidencing the acquisition of all essential parts used to rebuild the vehicle;" photographs of the rebuilt vehicle, if required; a certificate of safety from the Illinois Department of Transportation (IDOT) as set forth in section 13-109; a list of all essential parts that were replaced and the identity of the vehicles that supplied the essential parts; and, if there was a contract for rebuilding the vehicle pursuant to section 3-304, a copy of the contract and the form executed by the rebuilder—or by section 3-304, which requires a signed, written affirmation from the applicant regarding various information about the vehicle. Plaintiff does not challenge the Secretary's supplemental final order on these points.

appealed. *Id.* at 468-69. The court of appeals reversed. Under Indiana law, "A vehicle that has been designated "JUNK", "DISMANTLED", "SCRAP", "DESTROYED", or any similar designation in another state or jurisdiction shall not be titled in Indiana." Ind. Code Ann. § 9-22-3-18 (West 2018). The court of appeals found that, despite Texas's issuance of salvage titles, "under the plain and unambiguous terms of Indiana Code section 9-22-3-18, [the] vehicles cannot be titled in Indiana since Texas had designated them as junk vehicles." *Majestic Auto Body*, 128 N.E.3d at 470-71. The court of appeals observed that "titling of vehicles that have been designated as junk by another state is not authorized by statute," and the trial court was instructed to vacate its orders requiring the issuance of salvage titles. *Id.* at 471.

¶ 35    We note that in *Majestic Auto Body*, the vehicles at issue were previously branded junk by the State of Texas and that the State of Texas issued the vehicles salvage titles. *Id.* at 467. It is apparent that there is a difference between a vehicle branded as junk and branded as salvage. Illinois law does not define salvage, but federal law provides some guidance. The federal Anti-Theft Car Act (49 U.S.C. § 30501 *et seq.* (2018)), which established the NMVTIS, defines a "junk automobile" as "incapable of operating on public streets, roads and highways" and "ha[ving] no value except as a source of parts or scrap." *Id.* § 30501(4). A "salvage automobile" is defined as

> "an automobile that is damaged by collision, fire, flood, accident, trespass, or other event, to the extent that its fair salvage value plus the cost of repairing the automobile for legal operation on public streets, roads, and highways would be more than the fair market value of the automobile immediately before the event that caused the damage."

¶ 36    From this, we can infer that the terms "junk" and "salvage" are not mutually exclusive: a junk vehicle is incapable of operation, while a salvage vehicle is, in insurance parlance, a total

loss, but perhaps capable of being restored to a functional automobile. In Illinois, a salvage certificate is a prerequisite for a rebuilt title. See 625 ILCS 5/1-168.1 (West 2018) (defining "rebuilt vehicle" as "A vehicle for which a salvage certificate has been issued and which subsequently has been put back into its original or operating condition by a licensed rebuilder and which has met all the requirements of a salvage vehicle inspection.").

¶ 37     Here, unlike *Majestic Auto Body*, there is no evidence that either Texas or New Hampshire ever issued a salvage title or certificate. The State of Texas branded the car junk. According to the NMVTIS report, the Texas junk brand indicated the car was

> "incapable of safe operation on the roads or highways and has no resale value except as a source of parts or scrap, or the vehicles [*sic*] owner has irreversibly designated the vehicle as a source of parts or scrap. This vehicle shall never be titled or registered. Also known as a non-repairable, scrapped, or destroyed."

The car was sold at auction and later New Hampshire issued a rebuilt title. The New Hampshire rebuilt title, however, does not change the fact that Texas previously branded the vehicle junk, and Illinois law does not allow the titling of a vehicle previously branded as junk by a foreign jurisdiction. Our legislature has determined that once a vehicle is branded junk, it will always be considered junk in Illinois. It does not matter that New Hampshire chose to issue a rebuilt title for a vehicle previously branded junk because Illinois does not permit such titling. A vehicle previously branded junk is not eligible for a rebuilt title in Illinois.

¶ 38     The record does not establish why Texas branded the car junk rather than salvage, but section 3-104.5 makes plain that the "why" does not matter: all that matters is the vehicle was branded junk by a foreign jurisdiction within ten years of the application for title. If New Hampshire law permits junk vehicles to be later titled as rebuilt, that is a matter of New Hampshire

law. Illinois, however, provides no such path for junk vehicles, which are only eligible for junking certificates. 625 ILCS 5/3-104.5(c) (West 2020); see also *id.* § 3-117.1 (governing when junking or salvage certificates must be obtained).

¶ 39    In sum, plaintiff's complete reliance on section 3-301 is misplaced considering the Vehicle Code does not permit titling of vehicles previously branded or designated junk by any jurisdiction within 10 years of making title application. Contrary to plaintiff's argument, sections 3-301 and 3-104.5 of the Vehicle Code do not conflict, and the two provisions can be harmonized. Where a vehicle has been titled as junk by another jurisdiction, that vehicle is considered junk in Illinois. If a vehicle was branded or titled "salvage" or "rebuilt" in another jurisdiction, the vehicle may be eligible for a rebuilt title in Illinois under section 3-301, provided it had not been branded "junk" at any point.

¶ 40    The Secretary's July 13, 2018, final order and December 12, 2019, supplemental final order correctly interpreted the Vehicle Code, and his conclusion that plaintiff's vehicle was not entitled to a certificate of title was not clearly erroneous. The circuit court's reversal of the Secretary's final order failed to give effect to the plain language of section 1-134.1's definition of "junk vehicle" where another jurisdiction has branded the vehicle as junk. Furthermore, the circuit court incorrectly concluded that section 3-301 applied and was satisfied because, as the Secretary found, plaintiff's title application did not satisfy the requirements for a rebuilt title where he had not submitted all the required documentation. We find no clear error in the Secretary's supplemental final order denying plaintiff's vehicle title application. We affirm the Secretary's supplemental final order denying plaintiff's title application and reverse the circuit court's order reversing the Secretary's supplemental final order and instructing the Secretary to issue plaintiff a certificate of title.

¶ 41                                        III. CONCLUSION

¶ 42    For the foregoing reasons, the Secretary's final order is affirmed, and the circuit court's

judgment is reversed.

¶ 43    Secretary's final order affirmed.

¶ 44    Circuit court judgment reversed.

**No. 1-20-1140**

| | |
|---|---|
| **Cite as:** | *Improta v. White*, 2021 IL App (1st) 201140 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, Nos. 18-CH-10369 & 20-CH-587; the Hon. David B. Atkins, Judge, presiding. |
| **Attorney For Appellant:** | Kwame Raoul, Attorney General, of Springfield (Jane Elinor Notz, Solicitor General, and David E. Neumeister, Assistant Attorney General, of Chicago, of counsel), for appellant. |
| **Attorneys For Appellee:** | Jordan Dorrestein and Richard L. Williams, of Griffin Williams McMahon & Walsh LLP, of Geneva, for appellee. |